IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**CRAIG HUTCHINGS**,                                                    Civil Case No. 09-233-KI

              Plaintiff,

    vs.                                                                               OPINION AND ORDER

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

              Defendant.


       Tim Wilborn
       Wilborn Law Office, P.C.
       P. O. Box 2768
       Oregon City, Oregon  97045

             Attorney for Plaintiff

       Kent S. Robinson
       Acting United States Attorney
       District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

David J. Burdett
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

   Attorneys for Defendant

KING, Judge:

  Plaintiff Craig Hutchings brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner terminating plaintiff's disability insurance benefits ("DIB").  Before the court is

the Commissioner's Motion to Remand (#16).  For the following reasons, I remand for a finding

of disability.

## BACKGROUND

  Plaintiff was found disabled and awarded DIB on May 22, 2001.  The disability award

was made by an Administrative Law Judge ("ALJ") after finding plaintiff met Listing 12.06, in

Appendix 1, Subpart P of part 404 of the Social Security Regulations, for anxiety disorder,

agoraphobia, and depression beginning August 15, 1999.

  The agency reviewed plaintiff's medical situation in February 2003 after receiving wage

information indicating plaintiff had worked in 2000, 2001, and 2002.  His tax returns indicated

that he earned $20,531 in 2001.  After reviewing plaintiff's current medical records, the agency

concluded plaintiff's condition had improved as of September 25, 2003. Plaintiff appealed this decision, but requested his hearing be set over five times while he continued to receive benefits. He suffered a heart attack in 2006, necessitating some of these set-overs. After the ALJ denied his fifth request for a set-over, plaintiff appeared at a hearing on June 13, 2007.

On June 21, 2007, the ALJ issued a decision finding that plaintiff was no longer disabled within the meaning of the Act and therefore no longer entitled to benefits. This decision became the final decision of the Commissioner on January 30, 2009, when the Appeals Council declined to review the decision of the ALJ.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The Commissioner has established a seven-step sequential evaluation process for determining if an individual's disability has ceased. 20 C.F.R. § 416.994(b)(5). The review will cease and benefits will continue at any point that the Commissioner determines that the individual remains unable to engage in substantial gainful activity. The steps are: (1) whether the individual has an impairment which meets or equals the severity of a listed impairment; (2) whether there has been medical improvement; (3) whether the medical improvement is related to the ability to work; (4) if there has been no medical improvement, or if the medical improvement is not related to the ability to work, whether an exception to the medical

Page 3 - OPINION AND ORDER

improvement standards apply; (5) whether the individual has a severe impairment or combination

of impairments; (6) whether the individual can do past relevant work; and (7) whether the

individual can perform other work in the national economy in light of his age, education, and

work experience.

### STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2003) (internal citations omitted).

### THE ALJ'S DECISION

The ALJ found that plaintiff had an adjustment disorder with mixed anxiety and

depression and residuals from a left arm fracture.  He concluded that these impairments did not

meet or equal the requirements of any of the listings.  He also found that plaintiff's impairments

had decreased in their severity.  He concluded plaintiff had the residual functional capacity

("RFC") to lift 50 pounds occasionally and 25 pounds frequently, but could lift only 20 pounds

occasionally and 10 pounds frequently with his left arm, could stand and walk six hours out of an

eight-hour day, could sit six hours out of an eight-hour day, was able to carry out simple

instructions and occasionally some detailed instructions, but was limited to occasional fine

fingering with his left hand.  Based on this RFC, the ALJ concluded plaintiff could not perform

Page 4 - OPINION AND ORDER

his past relevant work.  He could, however, work as a kitchen helper, sandwich maker, and recycler.

## FACTS

Plaintiff, born in 1954, alleges disability due to anxiety, panic attacks, seizures, and problems with memory.  Plaintiff graduated from high school and has some college.  He has worked as a construction laborer, car salesman and a used car broker.

Plaintiff traces his problems to a head injury he suffered after he hit a deer while riding his motorcycle in 1988.  He described it as a very serious accident, where he was "pronounced dead on the highway."  Tr. 363.  He was admitted to the hospital; the admittance papers described him as having been drinking and displaying "an altered state of consciousness, most likely secondary to alcohol."  Tr. 279.  Additionally, "[a]t the time of admission he was somnolent and difficult to arouse.  Neurological examination was otherwise negative."  Id.  His blood alcohol level was 0.226.  Plaintiff fractured his clavicle and fractured the right parietal bone in his skull.  The CT scan of the head also showed a hematoma.  He was transferred by ambulance to another hospital once the subdural hematoma was discovered.  The administrative record does not contain any materials of treatment plaintiff received at the hospital for his brain injury.

The CT scan from August 1989 showed no acute intracranial pathology.  Neal Baumbach, M.D., noted in 1989 that no surgery was done after the 1988 accident.

Both Rajiv S. Patak, M.D., and Perminder J.S. Bhatia, M.D., evaluated plaintiff in 2000 for the state agency and both concluded that plaintiff was normal physically and neurologically, although he did demonstrate severe limitation of motion in his left elbow.  The EEG was normal

and the doctors concluded plaintiff was not suffering from seizures, but did have depression and anxiety.

Pavitar S. Cheema, M.D., evaluated plaintiff in August of 2000 and found plaintiff to be anxious, restless, and hyperactive. His mood was labile and his affect was blunted. Plaintiff could only recall one of three words after five minutes. His proverb interpretation was concrete. Plaintiff was taking 1 mg of Xanax four times a day. Dr. Cheema diagnosed panic attacks without agoraphobia and alcohol abuse in early remission. He concluded plaintiff could understand and carry out simple job instructions.

Geoffrey H. Bartol, Ph.D., examined plaintiff in July of 2003 and found plaintiff to be mildly anxious and highly focused on his disability. He was not agitated or restless, had good eye contact and was cooperative. He was fully oriented with good concentration and attention. He had a good handle on general information and could do simple calculations, but his short-term memory was poor–he could only remember two of four words after ten minutes. Dr. Bartol diagnosed adjustment disorder with mixed anxiety and depressed mood.

William Trueblood, Ph.D., evaluated plaintiff in September of 2003. He diagnosed plaintiff with panic disorder without agoraphobia, depressive disorder, and rule out organic mental disorder NOS. Dr. Trueblood's tests showed plaintiff to have a Full Scale IQ of 86, which is in the low average range of intellectual functioning. The pattern showed evidence of decline from a higher level of functioning. Plaintiff's learning and memory skills were well below what Dr. Trueblood expected, demonstrating moderate impairment. He scored very low on tests measuring motivation and cooperation. Dr. Trueblood felt that the test results were indicative of plaintiff's poor cooperation, but noted that "[i]f this gentleman truly has a history of

Page 6 - OPINION AND ORDER

either severe traumatic brain injury or severe seizure disorder, I would be inclined to regard the present neuropsychological test results as valid and as providing accurate information about this gentleman's neuropsychological functioning."  Tr. 417.

Agency physicians concluded from the file that plaintiff did not suffer from any severe impairments.

Marc Williams, M.D., plaintiff's treating physician, noted in October of 2004 that plaintiff's disagreement with the Social Security Administration over his benefits was causing him distress.  Dr. Williams noted, "It does appear that he would have difficulty functioning in a work setting, especially at this time, and probably would even when he is doing fairly well.  However, we have not known him for very long and have not evaluated this extensively."  Tr. 473.  In May 2007, Dr. Williams subsequently opined that plaintiff had marked limitations in understanding and carrying out simple instructions and extreme limitations in carrying out and understanding detailed instructions.  He noted that plaintiff was not able to follow simple instructions regarding his medications.  He also commented that plaintiff had "problems with memory, planning, organization and has permanent cognitive impairments."  Tr. 518.

At the hearing in June of 2007, plaintiff testified that he was not working in 2000 and 2001, but that his uncle was giving him money to support his children and mother.  He testified that his uncle "was letting me hang around with him." Tr. 358.  He was attending car auctions with his uncle all over the West.  With regard to his symptoms, plaintiff complained of dizziness, memory problems, the need to lie down daily for one to three hours, clamminess, nausea, depression, and panic attacks a couple of times per week.  Plaintiff lived with either his son in Monmouth or his mother in La Pine.  His son drove him between the two locations because

Page 7 - OPINION AND ORDER

plaintiff no longer drove.  He did the dishes and cleaning, including vacuuming.  He pulled

weeds.  He did not cook using the stove or oven because he was afraid he would forget to turn it

off, but he did make sandwiches.  He golfed once a week with his son.

His uncle reported that he hired his nephew "[d]ue to his lack of finances, and ability to

hold a decent job, I felt it was my mission to help him."  Tr. 167.  He computed the pay by

"[p]aying him commission on cars he actually didn't buy or sell, just helping where I could."  Tr.

169.

### DISCUSSION

The Commissioner concedes that the ALJ neglected to evaluate plaintiff's medical

improvement with the specificity required by the regulations.  The regulations define medical

improvement to be a decrease in the severity of the impairment that was present at the time the

individual was disabled or continued to be disabled.  20 C.F.R. § 404.1594(b)(1).  A finding of a

decrease in medical severity must be supported by improvement in symptoms, signs or laboratory

findings.  Id.  The Commissioner contends further proceedings are necessary to examine whether

there has been a decrease in the medical severity of plaintiff's impairments since the first

decision finding disability and he seeks a remand for further findings.

I.      Available Remedy

Plaintiff argues that reinstatement of benefits is the only remedy for the ALJ's errors in

the context of a continuing disability review; he contends the court is precluded from remanding

for further proceedings.  Relying on Patti v. Schweiker, 669 F.2d 582, 586-87 (9th Cir. 1982), in

which the court discussed the Commissioner's burden of showing medical improvement,

plaintiff contends he is presumed to be disabled where the Commissioner failed to meet that

burden.  Plaintiff also relies on the statement in <u>Iida v. Heckler</u>, 705 F.2d 363, 365 (9th Cir.

1983), that "benefits wrongfully terminated should be reinstated without further agency

proceedings."

As the Ninth Circuit subsequently made clear, however, Congress amended the statute

after <u>Patti</u> and the court "must now look to the statute and the regulations for guidance."  <u>Warren</u>

<u>v. Bowen</u>, 804 F.2d 1120, 1121 (9th Cir. 1986), <u>as amended</u>, 817 F.2d 63 (9th Cir. 1987).  It is true

the statutes require the Commissioner to come forward with evidence of medical improvement,

but "[a]ny determination made under this section shall be made on the basis of the weight of the

evidence and on a neutral basis with regard to the individual's condition, without any initial

inference as to the presence or absence of disability being drawn from the fact that the individual

has previously been determined to be disabled."  42 U.S.C. § 423(f).  The Commissioner admits

that he failed to meet his burden, but I must apply the factors in <u>Smolen v. Chater</u>, 80 F.3d 1273,

1292 (9th Cir. 1996), and <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003), to determine

whether a remand for additional evidence or a finding of disability is most appropriate.  Even the

court in <u>Iida</u> considered whether further administrative proceedings would be beneficial in

evaluating whether the claimant's condition had improved.  705 F.2d at 365 (court noted three

orthopedic reports supported disability, including one which stated claimant was "almost

completely disabled and on a permanent basis").  Contrary to plaintiff's suggestion then, there is

no "remedy prescribed by circuit precedent" requiring a remand for benefits when the

Commissioner fails to meet his burden of showing medical improvement.  Pl's. Opp. at 8.

II.    <u>Whether to Remand for Further Proceedings or Finding of Disability</u>

The Commissioner contends that remand for further proceedings is necessary in order to

properly discuss the opinions of the state agency consultants, finding no severe impairment, as

well as to properly examine Dr. Trueblood's opinion.  The Commissioner suggests Dr.

Trueblood opined that plaintiff suffered only moderate limitations, which would be evidence of

medical improvement.  The Commissioner further concedes that Dr. Williams' conclusions about

plaintiff's limitations "could suggest a level of impairment on par with Plaintiff's condition at the

time of his most recent favorable decision," but argues that "[f]urther proceedings are necessary

to address the opinion of Dr. Williams in contrast to the rest of the medical record."  Def's.

Memo. in Supp. of Remand at 9.

The problem with the Commissioner's request is that the Commissioner has not given

any reason why the ALJ on remand could accept Dr. Trueblood's moderate limitations over Dr.

Williams' marked limitations.

The weight given to the opinion of a physician depends on whether the physician is a

treating physician, an examining physician, or a nonexamining physician.  <u>Lester v. Chater</u>, 81

F.3d 821, 830 (9th Cir. 1996).  More weight is given to the opinion of a treating physician

because the person has a greater opportunity to know and observe the patient as an individual.

<u>Id.</u>; <u>Smolen</u>, 80 F.3d at 1285.  If a treating or examining physician's opinion is not contradicted

by another physician, the ALJ may only reject it for clear and convincing reasons.  Even if it is

contradicted by another physician, the ALJ may not reject the opinion without providing specific

and legitimate reasons supported by substantial evidence in the record.  <u>Lester</u>, 81 F.3d at 830.

The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831.

The ALJ concluded that the opinions of plaintiff's treating physician, Dr. Williams, were not consistent with plaintiff's daily activities and the treatment record, were based on plaintiff's self-report, and that formal neuropsychological testing was suggestive of poor cooperation.

The Commissioner does not attempt to defend the ALJ's rationale, and for good reason. Plaintiff's ability to play golf once a week, perform household chores and do yard work is simply not inconsistent with Dr. Williams' conclusions that plaintiff had marked limitations in remembering and carrying out simple instructions, had extreme limitations in making judgments on simple work-related decisions, and had marked limitations in interacting with the public and supervisors. It is true Dr. Trueblood found plaintiff to be an uncooperative participant in the testing, but Dr. Trueblood explicitly conditioned that opinion on his uncertainty about whether plaintiff had suffered a severe head trauma in the past. The ALJ pointed to no place in the treatment record that was inconsistent with Dr. Williams' conclusions and I could find none. Finally, Dr. Williams' conclusions were based on his observations; he saw that plaintiff had an inability to follow medicine protocol, had problems with memory, planning and organization, forgot simple instructions, was unable to complete important forms, and suffered from mood problems.

In short, neither the ALJ nor the Commissioner can give specific and legitimate reasons why an ALJ on remand could reject Dr. Williams' opinion in favor of Dr. Trueblood's conclusion that plaintiff suffers from more moderate limitations.

Page 11 - OPINION AND ORDER

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen, 80 F.3d at 1292. The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett, 340 F.3d at 876. The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

A remand for further proceedings might be appropriate in the case where the record contains sufficient reasons to disregard a doctor's opinion, McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989), but as I have explained above, this is not that case. Accepting Dr. Williams' opinion as true, then, plaintiff meets either Listing 12.02 (requires showing of memory impairment, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace) or Listing 12.06 (requires showing of recurrent

severe panic attacks, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace).  As it is clear from the record that the ALJ would be required to find plaintiff disabled, remand for further proceedings is not appropriate.

Since I resolve the case on these grounds, I need not reach the remaining issues raised by plaintiff.

## CONCLUSION

The Commissioner's Motion to Remand (#16) is granted.  The decision of the Commissioner is reversed and the action is remanded for a finding of disability.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____25th_____ day of January, 2010.


_____/s/ Garr M. King_____
Garr M. King
United States District Judge